677 So.2d 272 (1996)
In re AMENDMENTS TO RULES REGULATING THE FLORIDA BAR.
No. 87589.
Supreme Court of Florida.
June 27, 1996.
John F. Harkness, Jr., Executive Director; John A. DeVault, III, President; John W. Frost, II, President-elect; John Hume, Chair, Rules Committee; Paul F. Hill, General Counsel; John A. Boggs, Directory of Lawyer Regulation; and Mary Ellen Bateman, UPL Counsel, The Florida Bar, Tallahassee, Robert M. Sondak of Cohen, Chase, et al., Miami, on behalf of the Task Force on Unlicensed Practice of Law; Steven W. Horton, Jacksonville, and Daniel K. Bean, Jacksonville, for Petitioner.
Michael Catalano, pro se, Miami; Robert D. Shapiro, pro se, Miami; Neil H. Butler of Butler & Long, Tallahassee, on behalf of Florida Counsel of Associated General Contractors; Ian Gardner, pro se, Plantation; and other interested parties, responding with comments regarding proposed amendments.
PER CURIAM.
The Florida Bar petitions this Court to amend the Rules Regulating the Florida Bar. We have jurisdiction. Art. V, § 15, Fla. Const.
The petition in this case constitutes the Florida Bar's annual proposed rule amendments. Notice of all but two of the Bar's proposed amendments was published in the February 15, 1996, issue of The Florida Bar News. The remaining two proposed rule amendments (technical changes to rules 6-1.1 and 6-1.2 governing legal specialization and education programs) were inadvertently omitted in the original publication. Those proposed amendments were published in the March 1, 1996, issue of the Bar News.
After publication but before filing with this Court, the Bar withdrew its proposed amendment to rule 10-2.1, which would have provided a definition for the unlicensed practice of law. The Bar withdrew that proposal after recognizing that the proposed definition needed further refinement. Other proposed amendments to that rule were not withdrawn.
The Bar has requested a waiver as to the thirty-day notice requirement contained in rule 1-12.1(g) so that the proposed technical amendments to rules 6-1.1 and 6-1.2 concerning legal specialization and education may travel with the remaining proposed amendments in this case. The Bar has also requested a waiver regarding the need to publish its withdrawal of the proposed definition for the unauthorized practice of law in rule 10-2.1. By this opinion, we grant those waiver requests. We now turn to the merits of this proceeding.
The Bar has summarized the proposed rule amendments as follows:

*273 CHAPTER 1. GENERAL
1-3. MEMBERSHIP
RULE 1-3.5 RETIREMENT
Summary: Would allow disciplinary action against a retired member of the Bar, for acts committed while that individual was a member in good standing.
1-4. BOARD OF GOVERNORS
RULE 1-4.3 COMMITTEES
Summary: Expands the executive committee of the board of governors by adding the president of the Young Lawyers Division and the chair of the communications committee.
1-7. DUES AND FISCAL CONTROL
RULE 1-7.3 DUES
Summary: Clarifies that inactive membership shall continue from year to year upon a member's timely initial election to be classified in that status.
CHAPTER 2. BYLAWS OF THE FLORIDA BAR
2.7. SECTIONS
RULE 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Summary: Changes the names of the Local Government Law Section to the City, County and Local Government Law Section, and the Practice Management and Technology Section to the Practice Management and Development Section.
CHAPTER 3. RULES OF DISCIPLINE
3.7. PROCEDURES
RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
Summary: Adds language that clarifies that the quorum requirement for grievance committee hearings does not require a minimum of 2 lawyers voting.
CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
4-5. LAW FIRMS AND ASSOCIATIONS
RULE 4-5.4 PROFESSIONAL INDEPENDENCE OF A LAWYER
Summary: Allows the practice of law in the form of a professional limited liability company or registered limited liability partnership.
4-7. INFORMATION ABOUT LEGAL SERVICES
RULE 4-7.2 ADVERTISING
Summary: Provides that all required disclosure statements for a lawyer or law firm advertisement must appear in every language that is used in any ad.
RULE 4-7.5 EVALUATION OF ADVERTISEMENTS
Summary: Allows the imposition of a late fee for attorney ads that are not timely filed for evaluation.
RULE 4-7.6 COMMUNICATION OF FIELDS OF PRACTICE
Summary: Clarifies that lawyers certified by The Florida Bar or any organization accredited by the American Bar Association (national or otherwise) may advertise themselves as "specialists."
4-8. MAINTAINING THE INTEGRITY OF THE PROFESSION
RULE 4-8.6 PROFESSIONAL SERVICE CORPORATIONS
Summary: Changes the name of the rule to "Authorized Business Entities," and allows for and defines the practice of law in the form of a professional limited liability company or registered limited liability partnership.

*274 CHAPTER 6. LEGAL SPECIALIZATION AND EDUCATION PROGRAMS
6-1. GENERALLY
RULE 6-1.1 COMPOSITION OF BOARD
Summary: Expands the Board of Legal Specialization and Education and establishes the office of chair-elect.
RULE 6-1.2 PUBLIC NOTICE
Summary: Deletes references to the Florida Designation Plan, to expire on June 30, 1996, and revises the public notice for telephone directories to reflect that the BLSE is the publisher of such notice.
CHAPTER 10. RULES GOVERNING THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW
10-1. PREAMBLE
RULE 10-1.2 DUTY OF THE FLORIDA BAR
Summary: Recognizes an individual's right of self-representation and that the right to represent another is a privilege to be granted and regulated by law.
10-2. DEFINITIONS
RULE 10-2.1 GENERALLY
Summary: Adds definitional language and definitional sections regarding the designated reviewer and executive committee.
10-3. STANDING COMMITTEE
RULE 10-3.1 GENERALLY
Summary: Sets forth the number of members to be appointed to the committee and provides for staggered terms.
RULE 10-3.2 DUTIES OF THE STANDING COMMITTEE
Summary: Amends the procedure for review of cases.
RULE 10-3.3 APPOINTMENT OF STAFF COUNSEL AND BAR COUNSEL
Summary: Revises reference from assistant staff counsel, to UPL staff counsel.
10-4. CIRCUIT COMMITTEES
RULE 10-4.1 GENERALLY
Summary: Amends the number of members needed for a quorum, number of years a member may serve on the committee, and the procedure for closing cases; sets forth guidelines regarding when meetings should be held.
10-6. PROCEDURES FOR INVESTIGATION
RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
Summary: Amends the procedure for review and disposition of cases.
10-7. PROCEEDINGS BEFORE A REFEREE
RULE 10-7.1. PROCEEDINGS GENERALLY
Summary: Amends title to read "Proceedings for Injunctive Relief."
RULE 10-7.2. PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
Summary: New rule which sets forth the procedure to be followed in proceedings for indirect criminal contempt.
CHAPTER 18. MILITARY LEGAL ASSISTANCE COUNSEL RULE
Summary: Creates a new chapter which would permit military attorneys to represent junior enlisted service members and their dependent family members in Florida courts for certain limited civil matters as *275 part of an organized military legal assistance program.
Of these proposed amendments, only three generated comment. First, Michael Catalano contends that we should reject the proposed amendments to rule 3-7.4, which are intended to clarify that the quorum requirement for grievance committee probable cause findings does not require a vote of two lawyers. This amendment is being proposed as a direct result of our decision in Florida Bar v. Catalano, 651 So.2d 91 (Fla.1995), in which we read rule 3-7.4 as providing to the contrary. Catalano argues that this amendment would result in unwarranted findings of probable cause against lawyers. We disagree. This amendment does not alter the requirement that all findings of probable cause must be made by an affirmative vote of a majority of the voting grievance committee members; the amendment simply alters the requirement that two of those voting members must be lawyers. Given that a finding of probable cause must still be by affirmative vote of a majority of voting members and that such findings of probable cause are subsequently subject to review by both a referee and this Court, we cannot say that this change unfairly prejudices the rights of those individuals subjected to the disciplinary process. Consequently, we reject Catalano's contentions.
Second, Robert Shapiro complains that rule 4-7.2 regarding lawyer advertising fails to address lawyer advertising on the Internet. In response to this comment, the Bar stated that this issue is currently being studied by the Standing Committee on Advertising and the Joint Presidential Advertising Task Force. Because this issue is currently being studied and a rule on this issue will likely be submitted in the near future, we decline to impose such regulations at this time.
Finally, we received a number of comments regarding proposed amendments to rule 10-1.2, which sets forth the duty of the Bar in the unlicensed practice of law. The proposed amendment to that rule provides:
The right of individuals to represent themselves is an inalienable right common to all natural persons. However, no one has the right to represent another; it is a privilege to be granted and regulated by the court for the protection of the public.
We received comments from numerous non-lawyer professionals contending that this proposal was too broad because it does not limit this prohibition on representation to the practice of law. According to the comments, this rule, as drafted, would prohibit representation in non-legal matters by non-lawyer trustees, certified public accountants, engineers, and numerous others. We agree. Neil Butler, who responded on behalf of the Florida Council of Associated General Contractors, proposes that we include limiting language to prohibit representation "in matters involving the practice of law." The Bar states that it has no objection to this additional language. While we believe the suggested language improves the proposed amendment, we find that this amendment should not be implemented at this time. As indicated earlier in this opinion, the Bar withdrew its proposed definition of the unlicensed practice of law for inclusion in rule 10-2.1 because that definition required refinement. We likewise find it appropriate to return the proposal at issue for further consideration in light of such decisions as Florida Bar v. Moses, 380 So.2d 412 (Fla.1980). The proposal, as submitted, provides that the right to represent another is a privilege to be granted and regulated by this Court. While this Court clearly has the authority under our Florida Constitution to regulate the unlicensed practice of law, we have found that "[t]his Court has no control over the agencies of this state, and [that] any attempt to exercise it would violate article II, section 3 of the constitution" Id. at 417. As such, we have determined that the legislature has the authority to "oust the Court's responsibility to protect the public in administrative proceedings." Id. The proposed amendment, as written, does not address these considerations. Because the Bar is reconsidering a proposed definition for the unlicensed practice of law, we conclude that the Bar should also reconsider this proposed amendment in light of the above. Consequently, we reject the proposed amendment to rule 10-1.2 at this time.
*276 We hereby adopt, without discussion, the remaining proposed amendments to the rules.
Accordingly, the rules are amended and adopted as reflected in the appendix to this opinion. The new language is indicated by underscoring; deletions are indicated by strike-through type. These amendments shall take effect on July 1, 1996.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THESE AMENDMENTS.

APPENDIX

RULE 1-3.5 RETIREMENT
Any member of The Florida Bar may retire from The Florida Bar upon petition to and approval of the board of governors. A retired member shall not practice law in this state except upon petition for reinstatement to and approval of the board of governors; the payment of all dues, fees, costs, or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.
A retired member shall remain subject to disciplinary action for acts committed before the effective date of retirement. Acts committed after retirement may be considered in evaluating the member's fitness to resume the practice of law in Florida as elsewhere stated in these Rules Regulating The Florida Bar.

* * * * * *

1-4. BOARD OF GOVERNORS

RULE 1-4.3 COMMITTEES
The board of governors shall create an executive committee composed of the president, president-elect, chair of the budget committee, chair of the communications committee, chair of the legislation committee, president of the young lawyers division, 2 members of the board appointed by the president, and 3 members of the board elected by the board to act upon such matters as arise and require disposition between meetings of the board; a budget committee composed of 9 members with 3-year staggered terms; grievance committees as provided for in chapter 3; unlicensed practice of law committees as provided for in chapter 10; and a professional ethics committee.

* * * * * *

RULE 1-7.3 DUES
(a) Dues Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred, or been placed on the inactive list pursuant to rule 3-7.13, shall pay annual dues to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the dues at more than $190 per annum. At the time of the payment of dues every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
Dues tendered to The Florida Bar shall not be accepted from any member who is delinquent in the payment of costs or restitution imposed against the member in a disciplinary proceeding. Costs shall be deemed delinquent unless paid within 30 days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown. Restitution shall be deemed delinquent unless accomplished in the manner and by the date provided in the disciplinary order or agreement.
(b) Prorated Dues. Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual dues for that fiscal year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
Failure to pay prorated dues shall result in the amount of such prorated dues being added to the next annual dues billing to the member without penalty. The combined prorated and annual dues payment must *277 thereafter be received by The Florida Bar on or before August 15, unless the member elects to pay by installment under this rule.
(c) Installment Payment of Dues. Members of The Florida Bar may elect to pay annual dues in three equal installments as follows:
(1) in the second and third year of their admission to The Florida Bar; or
(2) if the member is employed by a federal, state or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar.
A member's notice of election to pay dues in installments under this rule and the first installment payment thereunder must be postmarked no later than August 15. The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.
Second and/or third installment payments postmarked after their respective due date(s) shall be subject to a one-time late charge of $25 per fiscal year, which shall accompany the final payment.
The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose dues and late fees have not been paid under this rule by February 1. Upon failure to pay dues and any late charges under this rule by March 15, the member shall be a delinquent member.
Each member who elects to pay annual dues in installments under this rule may be charged an additional administrative fee to defray the costs of this activity as set by the Board of Governors.
(d) Election of Inactive Membership. A member in good standing may elect by August 15 of each a fiscal year to be classified as an inactive member. Such election shall be made only by indication of such choice on the annual dues statement and payment of the prescribed annual dues. Failure to make the initial election by August 15 shall constitute a waiver of the member's right to the election until the next fiscal year. Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules. The election of inactive status shall be subject to the restrictions and limitations elsewhere provided.
Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules.
Dues for inactive members shall be set by the board of governors in an amount not to exceed $140 per annum.
(e) Late Payment of Dues. Payment of annual dues must be postmarked no later than August 15. Dues postmarked after August 15 shall be accompanied by a late charge of $25. The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose dues have not been paid by August 15. Upon failure to pay dues and any late charges by September 30, the member shall be a delinquent member.

* * * * * *

BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable. The following sections of The Florida Bar have been created by the board of governors:
(a) Administrative Law Section;
(b) Appellate Practice and Advocacy Section;
(c) Business Law Section;
(nd)City, County and Local Government Law Section;
(de) Criminal Law Section;
(ef) Elder Law Section;
(fg) Entertainment, Arts, and Sports Law Section;
(gh) Environmental and Land Use Law Section;
(hi) Family Law Section;

*278 (ij) General Practice Section;
(jk) Government Lawyer Section;
(kl) Health Law Section;
(lm) International Law Section;
(mn) Labor and Employment Law Section;
(o) Practice Management and Technology Development Section;
(p) Public Interest Law Section;
(q) Real Property, Probate, and Trust Law Section;
(r) Tax Section;
(s) Trial Lawyers Section; and
(t) Workers' Compensation Section.
The following divisions of The Florida Bar have been created by the board of governors:
(a) Out-of-State Practitioners Division; and
(b) Young Lawyers Division.

* * * * * *

RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
(a) Notice of Hearing. When notice of a grievance committee hearing is sent to the respondent, such notice shall be accompanied by a list of the grievance committee members.
(b) Complaint Filed With Grievance Committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate branch staff counsel for docketing and assignment of a case number, unless the committee resolves the complaint within 10 days after receipt of the complaint. A written report to bar counsel shall include the following information: complainant's name and address, respondent's name, date complaint received by committee, copy of complaint letter or summary of the oral complaint made, and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to bar counsel for docketing.
(c) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee by counsel whether based upon a written complaint or not.
(d) Conduct of Proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules of evidence.
(e) No Delay for Civil or Criminal Proceedings. An investigation shall not be deferred or suspended without the approval of the board even though the respondent is made a party to civil litigation or is a defendant or is acquitted in a criminal action, notwithstanding that either of such proceedings involves the subject matter of the investigation.
(f) Counsel and Investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Bar counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no probable cause, recommended discipline for minor misconduct, and letters of advice after no probable cause findings.
(g) Quorum, Panels, and Vote.
(1) Quorum. Three members of the committee, 2 of whom must be lawyers, shall constitute a quorum.
(2) Panels. The grievance committee may consider cases in be divided into panels of not fewer than 3 members, 2 of whom must be lawyers. Consideration of matters by a Division of the grievance committee into panels of 3 members shall only be conducted upon concurrence of the designated reviewer and the chair of the grievance committee. The 3-member panel shall elect 1 of its lawyer members to preside over the panel's actions. If the chair or vice-chair is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(3) Vote. All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least 2 *279 members. There shall be no required minimum number of lawyer members voting in order to satisfy the requirements of this rule. The number of committee members voting for or against the committee report shall be reflected in the transcript. Minority reports may be filed. A lawyer grievance committee member may not vote on the disposition of any matter in which that member served as the investigating member of the committee.
(h) Rights and Responsibilities of the Respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any finding of probable cause or minor misconduct is made, the respondent shall be advised of the conduct that is being investigated and the rules that may have been violated. The respondent shall be provided with all materials considered by the committee and shall be given an opportunity to make a written statement, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct.
(i) Rights of the Complaining Witness. The complaining witness is not a party to the disciplinary proceeding. Unless it is found to be impractical by the chair of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when the respondent is present before the committee. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution, will excuse the completion of an investigation. The complaining witness shall have no right to appeal.
(j) Finding of No Probable Cause.
(1) Authority of Grievance Committee. A grievance committee may terminate an investigation by finding that no probable cause exists to believe that the respondent has violated these rules. The committee may issue a letter of advice to the respondent in connection with the finding of no probable cause.
(2) Notice of Committee Action. Bar counsel shall notify the respondent and complainant of the action of the committee.
(3) Effect of No Probable Cause Finding. A finding of no probable cause by a grievance committee shall not preclude the reopening of the case and further proceedings therein.
(4) Disposition of Committee Files. Upon the termination of the grievance committee's investigation, the committee's file shall be forwarded to bar counsel for disposition in accord with established bar policy.
(k) Letter Reports in No Probable Cause Cases. Upon a finding of no probable cause, bar counsel will submit a letter report of the no probable cause finding to the complainant, presiding member, investigating member, and the respondent, including any documentation deemed appropriate by bar counsel and explaining why the complaint did not warrant further proceedings. Letters of advice issued by a grievance committee in connection with findings of no probable cause shall be signed by the presiding member of the committee. Letter reports and letters of advice shall not constitute a disciplinary sanction.
(l) Preparation, Forwarding, and Review of Grievance Committee Complaints. If a grievance committee finds probable cause, the bar counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The record before the committee shall consist of all reports, correspondence, papers, and/or recordings furnished to or received from the respondent, and the transcript of grievance committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The formal complaint shall be signed by the member of the committee who presided in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. If the presiding member of the grievance committee disagrees with the form of the complaint, *280 the presiding member may direct bar counsel to make changes accordingly. If bar counsel does not agree with the changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by bar headquarters staff counsel who shall file the formal complaint, and furnish a copy of the formal complaint to the respondent. A copy of the record shall be made available to the respondent at the respondent's expense.
(m) Recommendation of Admonishment for Minor Misconduct. If the committee recommends an admonishment for minor misconduct, the grievance committee report shall be drafted by bar counsel and signed by the presiding member. The committee report need only include: (1) the committee's recommendations regarding the admonishment, designation withdrawal, and conditions of redesignation; (2) the committee's recommendation as to the method of administration of the admonishment; (3) a summary of any additional charges that will be dismissed if the admonishment is approved; (4) any comment on mitigating, aggravating, or evidentiary matters that the committee believes will be helpful to the board in passing upon the admonishment recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admitted guilt to minor misconduct. No record need be submitted with such a report. After the presiding member signs the grievance committee report, the report shall be returned to bar counsel. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by bar counsel.
(n) Rejection of Admonishment. The order of admonishment shall become final unless rejected by the respondent within 15 days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause.
(o) Recommendation of Diversion to Remedial Programs. A grievance committee may recommend, as an alternative to issuing a finding of minor misconduct or no probable cause with a letter of advice, diversion of the disciplinary case to a practice and professionalism enhancement program as provided elsewhere in these rules. A respondent may reject the diversion recommendation in the same manner as provided in the rules applicable to rejection of findings of minor misconduct. In the event that a respondent rejects a recommendation of diversion, the matter shall be returned to the committee for further proceedings.
(p) Appointment of Bar Counsel. When a grievance committee formal complaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel of The Florida Bar headquarters in Tallahassee may appoint bar counsel unless bar counsel has been appointed, sign the complaint and file the same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, bar counsel will prepare the formal complaint.

* * * * * *

RULE 4-5.4 PROFESSIONAL INDEPENDENCE OF A LAWYER
(a) Sharing Fees with Nonlawyers. A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to 1 or more specified persons;
*281 (2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation that fairly represents the services rendered by the deceased lawyer;
(3) a lawyer who purchases the practice of a deceased, disabled, or disappeared lawyer may, in accordance with the provisions of rule 4-1.17, pay to the estate or other legally authorized representative of that lawyer the agreed upon purchase price; and
(4) bonuses may be paid to nonlawyer employees based on their extraordinary efforts on a particular case or over a specified time period, provided that the payment is not based on the generation of clients or business and is not calculated as a percentage of legal fees received by the lawyer or law firm.
(b) Qualified Pension Plans. A lawyer or law firm may include nonlawyer employees in a qualified pension, profit-sharing, or retirement plan, even though the lawyer's or law firm's contribution to the plan is based in whole or in part on a profit-sharing arrangement.
(c) Partnership With Nonlawyer. A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(d) Exercise of Independent Professional Judgment. A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
(e) Nonlawyer Ownership of Professional Service Corporation or Association Authorized Business Entity. A lawyer shall not practice with or in the form of a professional corporation or association business entity authorized to practice law for a profit if:
(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration; or
(2) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

Comment
The provisions of this rule express traditional limitations on sharing fees. These limitations are to protect the lawyer's professional independence of judgment. Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client. As stated in subdivision (c), such arrangements should not interfere with the lawyer's professional judgment.
The prohibition against sharing legal fees with nonlawyer employees is not intended to prohibit profit-sharing arrangements that are part of a qualified pension, profit-sharing, or retirement plan. Compensation plans, as opposed to retirement plans, may not be based on legal fees.

* * * * * *

RULE 4-7.2 ADVERTISING
(a) Permissible Forms of Advertising. Subject to all the requirements set forth in this subchapter 4-7, including the filing requirements of rule 4-7.5, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, billboards and other signs, radio, television, and recorded messages the public may access by dialing a telephone number, or through written communication not involving solicitation as defined in rule 4-7.4. These rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the State of Florida.
(b) Single Voice Requirement; Employee of Lawyer or Law Firm. Advertisements on the electronic media such as television and radio may contain the same factual information and illustrations as permitted in advertisements in the print media, but the information shall be articulated by a single voice, with no background sound other than *282 instrumental music. The voice may be that of a full-time employee of the firm whose services are advertised; it shall not be that of a celebrity whose voice is recognizable to the public. The lawyer or full-time employee of the firm whose services are being advertised may appear on screen or on radio.
(c) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rules shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content.
(d) Disclosure Statement. Except as provided in this subdivision, all advertisements, other than lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience." Lawyer referral service advertisements shall contain the following disclosure: "The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer's qualifications and experience." These disclosures need not appear in electronic advertisements or advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (n)(1)-(10) of this rule.
(e) Dramatizations Prohibited. There shall be no dramatization in any advertisement in any medium.
(f) Use of Illustrations. Illustrations used in advertisements shall present information that can be factually substantiated and is not merely self-laudatory.
(g) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of rule 4-7.6.
(h) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and written communication that contains information about the lawyer's fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee. Additionally, advertisements and written communications indicating that the charging of a fee is contingent on outcome or that the fee will be a percentage of the recovery shall disclose (1) that the client will be liable for expenses regardless of outcome, if the lawyer so intends to hold the client liable; and (2) whether the percentage fee will be computed before expenses are deducted from the recovery, if the lawyer intends to compute the percentage fee before deducting the expenses.
(i) Period for Which Advertised Fee Must be Honored. A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than 1 year following publication.
(j) Self-laudatory Statements. A lawyer shall not make statements that are merely self-laudatory or statements describing or characterizing the quality of the lawyer's services in advertisements and written communications; provided that this provision shall not apply to information furnished to a prospective client at that person's request or to information supplied to existing clients.
(k) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.7.
(l) Location of Practice. All advertisements and written communications provided for under these rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made.
*283 (m) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm unless the advertisement discloses the name and address of the nonadvertising lawyer, the relationship between the advertising lawyer and the nonadvertising lawyer, and whether the advertising lawyer may refer any case received through the advertisement to the nonadvertising lawyer.
(n) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of rule 4-7.1:
(1) subject to the requirements of this rule and rule 4-7.7, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office addresses and telephone numbers, office and telephone service hours, and a designation such as "attorney" or "law firm";
(2) date of admission to The Florida Bar and any other bars and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(3) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(4) foreign language ability;
(5) fields of law in which the lawyer practices, subject to the requirements of rule 4-7.6;
(6) prepaid or group legal service plans in which the lawyer participates;
(7) acceptance of credit cards;
(8) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (h) and (i) of this rule;
(9) a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event; and
(10) a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be referred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
(o) Advertising in Law Directory. Nothing in this rule prohibits a lawyer or law firm from permitting the inclusion in law lists and law directories intended primarily for the use of the legal profession of such information as has traditionally been included in these publications.
(p) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertising in accordance with the requirements of rule 4-7.5, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used.
(q) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
(r) Language of Required Statements. Any words or statements required by this rule, rule 4-7.3, or rule 4-7.4 to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this rule, rule 4-7.3, or rule 4-7.4 must appear in each language used in the advertisement or direct mail communication.

*284 Comment
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public's need to know about legal services can be fulfilled in part through advertising that provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by persons untrained in the law. Such advertising can also adversely affect the public's confidence and trust in our judicial system.
In order to balance the public's need for useful information, the state's need to ensure a system by which justice will be administered fairly and properly, as well as the state's need to regulate and monitor the advertising practices of lawyers, and a lawyer's right to advertise the availability of the lawyer's services to the public, this rule permits public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public's confidence in the legal profession and this country's system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
Subdivisions (b) and (e) of this rule are designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and to encourage a focus on providing useful information to the public about legal rights and needs and the availability and terms of legal services. Thus, the rule allows all lawyer advertisements in which the lawyer personally appears to explain a legal right, the services the lawyer is available to perform, and the lawyer's background and experience.
The prohibition in subdivision (b) against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles. Subdivision 4-7.1(d) forbids use of testimonials or endorsements from clients or anyone else. Subdivision (e) prohibits dramatizations in any advertisement, including those appearing on the electronic media. This is intended to preclude the use of scenes creating suspense, scenes containing exaggerations or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. While informational illustrations may attract attention to the advertisement and help potential clients to understand the advertisement, self-laudatory illustrations are *285 inherently misleading and thus prohibited. As an example, a drawing of a fist, to suggest the lawyer's ability to achieve results, would not be informational and would be barred.
Regardless of medium, a lawyer's advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, oversized electrical and neon signs or sound trucks fail to meet these standards and diminish public confidence in the legal system.
The disclosure required by subdivision (d) of this rule is designed to encourage the informed selection of a lawyer. As provided in rule 4-7.3, a prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus in print advertisements, the type size used for the disclosure must be sufficient to cause the disclosure to be conspicuous; in recorded advertisements, the disclosure must be spoken at a speed that allows comprehension by the average listener. This rule does not specify the exact type size to be used for the disclosure or the exact speed at which the disclosure may be spoken; good faith and common sense should serve as adequate guides for any lawyer.
Neither this rule nor rule 4-7.4 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
This rule applies to advertisements and written communications directed at prospective clients and concerning a lawyer's or law firm's availability to provide legal services. The rule does not apply to communications between lawyers, including brochures used for recruitment purposes.

Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.8. Subdivision (q) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.

* * * * * *

RULE 4-7.5 EVALUATION OF ADVERTISEMENTS
(a) Advisory Opinion. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication with these rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (d) to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer's voluntary submission shall be deemed to satisfy the filing requirement set forth in subdivision (b) of this rule.
(b) Filing Copy of Advertisement. Subject to the exemptions stated in subdivision (c) of this rule, any lawyer who advertises services through any public media or through written communication not involving solicitation as defined in rule 4-7.4 shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (d).
(c) Exemptions from Filing Requirement. The following are exempt from the filing requirements of subdivision (b) of this rule:
(1) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set *286 forth in rule 4-7.2(n)(1)-(10). This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(2) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution. In determining whether an announcement is a public service announcement for purposes of this rule and rule 4-7.2(n)(9), the following are criteria that may be considered:
(A) whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(B) whether the announcement contains information concerning the lawyer's or law firm's area of practice, legal background, or experience;
(C) whether the announcement contains the address or telephone number of the lawyer or law firm;
(D) whether the announcement concerns a legal subject;
(E) whether the announcement contains legal advice; and
(F) whether the attorney paid to have the announcement published.
(3) A listing or entry in a law list.
(4) A newsletter mailed only to existing clients or other lawyers.
(5) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing clients.
(d) Contents of Filing. A filing with the committee as required by subdivision (b) or as permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(4) a fee paid to The Florida Bar, in an amount set by the board of governors but not exceeding of $50 for submissions timely filed as provided in subdivisions (a) or (b), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(e) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the 15-day period, and so advises the lawyer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the lawyer within 15 days, the advertisement will be deemed approved.
(f) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
*287 (g) Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(h) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(i) Change of Circumstances; Refiling Requirement. If a change of circumstances occurring subsequent to the committee's evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $50.

Comment
This rule has a dual purpose: to enhance the court's and the bar's ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee's opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee's opinion as demonstrating the lawyer's good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in this rule and rule 4-7.2(n). Subdivisions (c)(2)(A)-(F) of this rule respond to the court's concern by setting forth criteria that, while not intended to be exclusive, provide the needed guidance. With the exception of subdivision (c)(2)(C), these criteria are based on factors considered by the court in Doe.

* * * * * *

RULE 4-7.6 COMMUNICATION OF FIELDS OF PRACTICE
A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
(a) Patent Practice. A lawyer admitted to engage in patent practice before the United States patent and trademark office may use the designation "patent attorney" or a substantially similar designation.
(b) Certified Lawyers. A lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by a national group which an organization whose specialty certification program has been accredited by the American Bar Association Standing Committee on Specialization may inform the public and other lawyers of the lawyer's certified areas of legal practice and may state in communications to the public that the lawyer is a "specialist in (area of certification)."
(c) Designated Lawyers. A lawyer who complies with the Florida designation plan as set forth in chapter 6, Rules Regulating The Florida Bar, may inform the public and other lawyers of the lawyer's designated areas of legal practice.

Comment
This rule permits a lawyer to indicate areas of practice in communications about the lawyer's services, such as in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not *288 accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or a national group an organization having substantially the same standards may be described to the public as a "specialist" or as "specializing."

* * * * * *

RULE 4-8.6 PROFESSIONAL SERVICE CORPORATIONS AUTHORIZED BUSINESS ENTITIES
(a) Professional Service Corporations Authorized Business Entities. Lawyers may practice law in the form of professional service corporations, professional limited liability companies, or registered limited liability partnerships organized or qualified under the Florida Statutes, only if when such corporations are organized all shareholders are legally qualified to render legal services in this state, and while such corporation and all shareholders, officers, directors, agents, and employees comply with the provisions of the Professional Service Corporation Act and the Rules Regulating The Florida Bar applicable law. A professional service corporation, a professional limited liability company, or a registered limited liability partnership is an authorized business entity under these rules.
(b) Practice of Law Limited to Members of The Florida Bar. No professional service corporation authorized business entity may engage in the practice of law in the state of Florida or render advice under or interpretations of Florida law except through officers, directors, partners, managers, agents, or employees who are qualified to render legal services in this state.
(c) Qualifications of Managers, Directors and Officers. No person shall serve as a partner, manager, director or executive officer of an professional service corporation authorized business entity and engaged in the practice of law in Florida unless such person is legally qualified to render legal services in this state. For purposes of this rule the term "executive officer" shall include the president, vice-president, or any other officer who performs a policy-making function.
(d) Violation of Statute or Rule. A lawyer who, while acting as a shareholder, member, officer, director, partner, manager, agent, or employee of an professional service corporation authorized business entity and engaged in the practice of law in Florida, violates or sanctions the violation of the Professional Service Corporation Act authorized business entity statutes or the Rules Regulating The Florida Bar shall be subject to disciplinary action.
(e) Disqualification of Shareholder, Member, or Partner; Severance of Financial Interests. Whenever a shareholder of a professional service corporation, a member of a professional limited liability company or partner in a registered limited liability partnership becomes legally disqualified to render legal services in this state, said shareholder, member, or partner shall sever all employment with and financial interests in such corporation authorized business entity immediately. For purposes of this rule the term "legally disqualified" shall not include suspension from the practice of law for a period of time less than 91 days. Severance of employment and financial interests required by this rule shall not preclude the shareholder, member, or partner from receiving compensation based on legal fees generated for legal services performed during the time when the shareholder, member, or partner was legally qualified to render legal services in this state. This provision shall not prohibit employment of a legally disqualified shareholder, member, or partner in a position that does not render legal service nor payment to an existing profit sharing or pension plan to the extent permitted in rule 4-5.4(a)(3), or as required by applicable law.
(f) Cessation of Legal Services. Whenever the sole all shareholders of a professional service corporation, or all members of a professional limited liability company, or all partners in a registered limited liability partnership becomes legally disqualified to render legal services in this state, the professional service corporation authorized business entity shall cease the rendition of legal services in Florida. No legal services may be rendered for the professional service corporation *289 by any officer, director, agent, or employee of the professional service corporation until the sole shareholder is legally qualified to render legal services in this state.
(g) Removal of Shareholder upon Disqualification. Whenever a shareholder of a professional service corporation becomes legally disqualified to render legal services in this state, the professional service corporation shall take steps to achieve the immediate removal of the shareholder from the professional service corporation.
(g) Application of Statutory Provisions. Unless otherwise provided in this rule, each shareholder, member, or partner of an authorized business entity shall possess all rights and benefits and shall be subject to all duties applicable to such shareholder, member, or partner provided by the statutes pursuant to which the authorized business entity was organized or qualified.

Comment
In 1961 this court recognized the authority of the legislature to enact statutory provisions creating corporations, particularly professional service corporations. But this court also noted that "[e]nabling action by this Court is therefore an essential condition precedent to authorize members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The 1961 Act." In re The Florida Bar, 133 So.2d 554, at 555 (Fla.1961).
The same is true today, whatever the form of business entity created by legislative enactment. Hence, this rule is adopted to continue authorization for members of the bar to practice law in the form of a professional service corporation, a professional limited liability company, or a registered limited liability partnership. These type of entities are collectively referred to as authorized business entities. This rule does not preclude any member of the bar from practicing law as a sole proprietor or as a member of a general partnership.

Limitation on rendering legal services
No person may render legal services on behalf of an professional service corporation authorized business entity unless that person is otherwise authorized to do so via membership in the bar or through a motion for leave to appear (pro hac vice). Neither the adoption of this rule nor the statutory provisions alter this limitation.
Employment by and financial interests in a professional service corporation
This rule and the statute require termination of employment of a shareholder, member, or partner when the shareholder same is "legally disqualified" to render legal services. The purpose of this provision is to prohibit compensation based on fees for legal services rendered at a time when the shareholder, member, or partner cannot personally render the same type of services. Continued employment engagement in capacities other than rendering legal services with the same or similar compensation would allow circumvention of prohibitions of sharing legal fees with one not qualified to render legal services. Other rules prohibit the sharing of legal fees with nonlawyers and this rule continues the application of that type of prohibition. However, nothing in this rule or the statute prohibits payment to the disqualified shareholder, member, or partner for legal services rendered while the shareholder, member, or partner was qualified to render same, even though payment for the legal services is not received until the shareholder, member, or partner is legally disqualified.
Similarly, this rule and the statutes require the severance of "financial interests" of a legally disqualified shareholder, member, or partner. The same reasons apply to severance of financial interests as those that apply to severance of employment.
Practical application of the statutes and this rule to the requirements of the practice of law mandates exclusion of short term, temporary removal of qualifications to render legal services. Hence, any suspension of less than 91 days, including dues delinquency suspensions, is excluded from the definition of the term. These temporary impediments to the practice of law are such that with the passage of time or the completion of ministerial acts, the member of the bar is automatically qualified to render legal services. Severe tax consequences would result from forced severance and subsequent reestablishment *290 (upon reinstatement of qualifications) of all financial interests in these instances.
However, the exclusion of such suspensions from the definition of the term does not authorize the payment to the disqualified shareholder, member, or partner of compensation based on fees for legal services rendered during the time when the shareholder, member, or partner is not personally qualified to render such services. Continuing the employment of a legally disqualified shareholder, member, or partner during the term of a suspension of less than 91 days requires the professional service corporation authorized business entity to take steps to avoid the practice of law by the legally disqualified shareholder, member, or partner, the ability of the legally disqualified shareholder, member, or partner to control the actions of members of the bar qualified to render legal services, and payment of compensation to the legally disqualified shareholder, member, or partner based on legal services rendered while the legally disqualified shareholder, member, or partner is not personally qualified to render them. Mere characterization of continued compensation, which is the same or similar to that the legally disqualified shareholder, member, or partner received when qualified to render legal services, is not sufficient to satisfy the requirements of this rule.

Profit sharing or pension plans
To the extent that applicable law requires continued payment to existing profit sharing or pension plans, nothing in this rule or the statute may abridge such payments. However, if permitted under applicable law the amount paid to the plan for a legally disqualified shareholder, member, or partner shall not include payments based on legal services rendered while the legally disqualified shareholder, member, or partner was not personally qualified to render legal services.

Interstate Practice
This rule permits members of The Florida Bar to engage in the practice of law with lawyers licensed to practice elsewhere in an authorized business entity organized under the laws of another jurisdiction and qualified under the laws of Florida (or vice-versa), but nothing herein is intended to affect the ability of non-members of The Florida Bar to practice law in Florida. See, e.g., The Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978).
The terms qualified and legally disqualified are imported from the Professional Service Corporation Act (Chapter 621, Florida Statutes).

* * * * * *

CHAPTER 6. LEGAL SPECIALIZATION AND EDUCATION PROGRAMS

6-1. GENERALLY

RULE 6-1.1 COMPOSITION OF BOARD
The board of legal specialization and education shall be composed of 13 16 members of The Florida Bar appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Twelve Fifteen of the members shall hold office for 3 years and until their successors are appointed. These 12 15 members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: 45 members shall serve until June 30 next following their appointment, 45 members shall serve until the second June 30 following their appointment, and 45 members shall serve until the third June 30 following their appointment. One of the 12 members shall be designated by the president as chair. The thirteenth In addition, 1 member shall also be the chair of the continuing legal education committee of The Florida Bar, although no person may be chair of both the board of legal specialization and education and continuing legal education committee of The Florida Bar. Any vacancy shall be filled in the manner provided for original appointments.

* * * * * *

RULE 6-1.2 PUBLIC NOTICE
The Florida Bar may cause a public notice to be promulgated where and when it deems necessary, including, for example, telephone directory yellow pages, in substantially the following form:

*291 NOTICE

FOR THE GENERAL INFORMATION OF THE PUBLIC
ATTORNEYS INDICATING "BOARD CERTIFIED" OR "SPECIALIST" HAVE BEEN CERTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE. "FLORIDA BAR DESIGNATED" ATTORNEYS HAVE MET MINIMUM EXPERIENCE AND EDUCATIONAL REQUIREMENTS UNDER THE FLORIDA DESIGNATION PLAN. "FLORIDA BAR MEMBERS" MAY LIST THEIR AREAS OF PRACTICE IN THE YELLOW PAGES WITHOUT MEETING ANY SPECIFIC CRITERIA.
ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ATTORNEY BEING CONSIDERED.
This notice published by The Florida Bar Board of Legal Specialization and Education, Telephone 904/561-5600, 650 Apalachee Parkway, Tallahassee, Florida XXXXX-XXXX.

* * * * * *

CHAPTER 10. RULES GOVERNING THE INVESTIGATION AND PROSECUTION OF THE UNLICENSED PRACTICE OF LAW

10-2. DEFINITIONS

RULE 10-2.1 GENERALLY
Whenever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the State of Florida. For purposes of this chapter, it shall not constitute the unlicensed practice of law for nonlawyers to engage a nonlawyer to engage in limited oral communications to assist a person in the completion of blanks on a legal form approved by the Supreme Court of Florida. Oral communications by nonlawyers are restricted to those communications reasonably necessary to elicit factual information to complete the blanks on the form and inform the person how to file the form.
The following language shall appear on any form completed pursuant to this rule and any individuals assisting in the completion of the form shall provide their name, business name, address, and telephone number on the form:
This form was completed with the assistance of:
Name of Individual
Name of Business
Address
Telephone Number
Before a nonlawyer assists a person in the completion of a form in the manner set forth in this rule, the nonlawyer shall provide the person with a copy of a disclosure. A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the nonlawyer shall keep a copy in the person's file. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability. The disclosure shall contain the following provisions:
(Name) told me that he/she is not a lawyer and may not give legal advice or represent me in court.
(Name) told me that he/she may only help me fill out a form approved by the Supreme Court of Florida. (Name) may only help me by asking me factual questions to fill in the blanks on the form. (Name) may also tell me how to file the form.
(Name) told me that he/she is not an attorney a lawyer and cannot tell me what my rights or remedies are or how to testify in court.
___ I can read English
___ I cannot read English but this notice was read to me by (Name) in (Language) which I understand.
(b) Nonlawyer or Nonattorney. For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, attorneys lawyers admitted in other jurisdictions, law students, *292 law graduates, applicants to The Florida Bar, disbarred attorneys lawyers, and suspended attorneys lawyers during the period of suspension.
(c) This Court or the Court. This court or the court shall mean the Supreme Court of Florida.
(d) Bar Counsel. Bar counsel is a member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any unlicensed practice of law staff counsel of The Florida Bar may serve as bar counsel or assistant bar counsel in a particular case.
(e) Respondent. A respondent is a nonlawyer who is accused of engaging in the unlicensed practice of law or whose conduct is under investigation.
(f) Referee. A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.
(g) Standing Committee. The standing committee is the committee constituted according to the directives contained in these rules.
(h) Circuit Committee. A circuit committee is a local unlicensed practice of law circuit committee.
(i) UPL Staff Counsel. UPL staff counsel is an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director. When used in this rule, the term may include assistant UPL staff counsel.
(j) UPL. UPL is the unlicensed practice of law.
(k) The Board or Board of Governors. The board or board of governors is the board of governors of The Florida Bar.
(l) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such circuit committee. If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. UPL staff counsel will be given written notice of changes in the designated reviewing members for a particular committee.
(m) Executive Committee. The executive committee is the executive committee of the board of governors of The Florida Bar. All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may from time to time be authorized by standing policies of the board of governors.

* * * * * *

10-3. STANDING COMMITTEE

RULE 10-3.1 GENERALLY
The standing committee shall be appointed by the court on advice of the board of governors of The Florida Bar and shall consist of at least 15 37 members, not less than 5 18 of whom shall be nonlawyers. The board of governors is delegated the authority to appoint a chair and at least 1 vice-chair of the standing committee, both of whom shall be members of The Florida Bar may be nonlawyers. A majority One-third of the members of the standing committee shall constitute a quorum. The members of the standing committee shall serve staggered terms. To accomplish this, the initial terms shall be staggered as follows: 2 members of The Florida Bar and 2 nonlawyer members to serve 1 year; 2 members of The Florida Bar and 2 nonlawyer members to serve 2 years; all remaining members to serve 3 years. After that, aAll appointments to the standing committee shall be for a term of 3 years. No member shall be appointed to more than 2 consecutive full terms. The members of the standing committee shall not be subject to removal by the court during their terms of office except for cause. Cause shall include *293 unexcused failures to attend scheduled meetings, the number of which shall be set forth by the standing committee in an attendance policy.

* * * * * *

RULE 10-3.2 DUTIES OF THE STANDING COMMITTEE
It shall be the duty of the standing committee to receive and evaluate circuit committee reports and make its findings and recommendations to the board of governors. The board of governors shall act upon these reports, findings, and recommendations and to determine whether litigation should be instituted in the court against any alleged offender. The board of governors standing committee may approve civil injunctive proceedings, referral to the appropriate state attorney for indirect criminal contempt prosecution proceedings, or a combination of both, or such other action as may be appropriate. In addition, the duties of the standing committee shall include, but not be limited to:
(a) the consideration and investigation of activities that may, or do, constitute the unlicensed practice of law;
(b) the supervision of the circuit committees, which shall include, but not be limited to:
(1) prescribing rules of procedure for circuit committees;
(2) assigning reports of unlicensed practice of law for investigation;
(3) reassigning or withdrawing matters previously assigned, and exercising final authority to close cases not deemed by the standing committee to then warrant further action by The Florida Bar for unlicensed practice of law, and to close closing cases proposed to be resolved by cease and desist affidavit where UPL staff counsel objects to the closing of the case or the acceptance of a cease and desist affidavit by the circuit committee;
(4) joining with a circuit committee in a particular investigation;
(5) assigning staff investigators, UPL staff counsel, and voluntary bar counsel to conduct investigations on behalf of or in concert with the circuit committees; and
(6) suspending circuit committee members and chairs for cause and appointing a temporary circuit committee chair where there has been a suspension, resignation, or removal, pending the appointment of a permanent chair by the board of governors;
(c) the reporting of recommendations to the board of governors that litigation should be instituted in order to prevent the unlicensed practice of law;
(d)(c) the initiation and supervision of litigation authorized by the board of governors, including the delegation of responsibility to UPL staff counsel, assistant UPL staff counsel, branch UPL counsel, or bar counsel to prosecute such litigation;
(e)(d) the giving of advice regarding the unlicensed practice of law policy to the officers, board of governors, staff, sections, or committees of The Florida Bar as requested; and
(f)(e) furnishing any and all information, confidential records, and files regarding pending or closed investigations of unlicensed practice of law to any state or federal law enforcement or regulatory agency, United States Attorney, state attorney, the Florida Board of Bar Examiners and equivalent entities in other jurisdictions, and Florida bar grievance committees and equivalent entities in other jurisdictions where there is or may be a violation of state or federal law or the Rules of Professional Conduct of The Florida Bar.

* * * * * *

RULE 10-3.3 APPOINTMENT OF STAFF COUNSEL AND BAR COUNSEL
The board of governors shall employ 1 or more assistant UPL staff counsel and other necessary employees, including investigators, to assist the standing committee to carry out its responsibilities as prescribed elsewhere in these rules. Upon approving a recommendation for litigation under these rules, the board of governors shall appoint bar counsel to prosecute the cause before the referee.

* * * * * *

*294 10-4. CIRCUIT COMMITTEES

RULE 10-4.1 GENERALLY
(a) Appointment. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. A majority of the members of a circuit committee shall constitute a quorum. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum. The terms of the members of circuit committees shall begin on July 1 and shall end on the next succeeding June 30 or at such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member's term, provided, however, tThe expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Committee Chair. For each circuit committee there shall be a chair designated by the board of governors and a vice-chair and secretary designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt written report of its investigation and findings to UPL staff counsel and the standing committee. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) closing cases not deemed by the circuit committee to warrant further action by The Florida Bar;
(2) closing cases proposed to be resolved by cease and desist affidavit; and
(3) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(d) Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not less frequently than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be set in advance by agreement between each committee and UPL staff counsel.

* * * * * *

RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
(a) Circuit Committee Action. Upon concluding its investigation, the circuit committee shall forward a recommendation report to UPL staff counsel regarding the disposition of the complaint those cases closed, those cases where a cease and desist affidavit has been accepted, and those cases where litigation is recommended. A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail or telephone rather than at a formal meeting. Unless otherwise provided by these rules, the recommendation of the circuit committee shall be reviewed by the standing committee for approval. All recommendations for litigation under these rules shall be reviewed by the board of governors standing committee and a designated reviewer for final approval prior to initiating litigation. Upon approval of the recommendations, UPL staff counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint.
(b) Action by UPL Staff Counsel. UPL staff counsel shall review the disposition reports of the circuit committee. If UPL staff counsel objects to any action taken by the circuit committee, UPL staff counsel shall forward such objection to the circuit committee within 10 days of receipt of the circuit committee report. UPL staff counsel shall place the action and objection before the standing committee for review at its next scheduled meeting. The standing committee shall review the circuit committee action and the objection, and shall vote on the final disposition of the case. Once a case is closed or a cease and desist affidavit is accepted by *295 the circuit committee or by the standing committee, UPL staff counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint.
(c) Review by Designated Reviewer. A designated reviewer shall review recommendations by the standing committee that litigation be initiated. If the designated reviewer disagrees with the recommendation for litigation, the designated reviewer shall make a report and recommendation to the board of governors. The designated reviewer shall make the report and recommendation within 21 days following the mailing date of the notice of standing committee action, otherwise the standing committee action shall become final.

* * * * * *

10-7. PROCEEDINGS BEFORE A REFEREE

RULE 10-7.1 PROCEEDINGS GENERALLY FOR INJUNCTIVE RELIEF
(a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reasonable clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staff counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The filing of a motion to dismiss prior to the filing of an answer shall postpone the time for the filing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080.
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings according to rule 10-7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court *296 where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(3) The Florida Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the filing of the order referring the matter to a referee.
(4) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the ruling complained of. A supporting brief and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief within 5 days of the date of service of the opposing party's responsive brief. Any party may request oral argument at the time that party's brief is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(5) At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, and a recommendation for final disposition of the cause. The original record shall be filed with the report. Copies of the referee's report shall be served upon all parties by the referee at the time it is filed with the court.
(6) Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or reject the stipulation and schedule a hearing as provided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rule 10-7.1(c)(5) shall be filed by the referee along with the stipulation.
(d) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief within 20 days of service of the objector's brief. The objector may file a reply brief within 10 days of service of the opposing party's responsive brief. Oral argument will be allowed at the court's discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee's report, the court shall review the report of the referee, together with any briefs or objections filed in support of or opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law, whether the respondent's activities should be enjoined by appropriate order, and whether further relief shall be granted.
(e) Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.

* * * * * *

RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the *297 court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president of The Florida Bar, or the chair of the standing committee, alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
(2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent's omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(1) if the respondent has been released on bail in the amount of $5,000 or more;
(2) if the respondent has no dependents and has gross income that exceeds $100 per week (the income limit shall be increased by $20 per week for each of the first two dependents of the respondent and by $10 per week for each dependent beyond the first two); or
(3) if the respondent owns cash in excess of $500.
In determining indigency, the court shall also consider: the probable expense and burden of defending the case; the ownership of, or equity in, any tangible or intangible personal property or real property, or the expectancy of an interest in any such property by the respondent; and the amount of debts owed by the respondent or debts that might be incurred by the respondent because of family illness or other family misfortunes.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent's own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
(5) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty.
*298 (6) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
(d) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of "guilty," together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief, to the referee's judgment and recommended sentence within 30 days of the date of filing with the court of the referee's judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief within 10 days after service of respondent's brief. The respondent may file a reply brief within 5 days after service of The Florida Bar's responsive brief.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $500.00, imprisonment of up to 5 months, or both.

* * * * * *

CHAPTER 18. MILITARY LEGAL ASSISTANCE COUNSEL RULE

18-1. GENERALLY

RULE 18-1.1 PURPOSE
The purpose of this chapter is to expand the delivery of legal assistance services to military personnel stationed in the state of Florida. This chapter authorizes military attorneys licensed to practice law in jurisdictions other than Florida to be certified to practice in Florida while formally assigned as a legal assistance attorney at a military base in the state of Florida.

* * * * * *

RULE 18-1.2 DEFINITIONS
(a) Authorized Legal Assistance Attorney. An "authorized legal assistance attorney" is any person who:
(1) is admitted to practice law by the highest court of another state, the District of Columbia, or a territory of the United States;
(2) is serving on active duty within the Department of Defense (including the National Guard while in federal service) or the Department of Transportation (with respect to the United States Coast Guard);
(3) is assigned to an installation, unit, and/or activity located within the geographic limitations of the courts of the state of Florida;
(4) has completed The Florida Bar Young Lawyers Division Bridge-the-Gap Seminar (Basic Skills Course Requirement); and
(5) appears in connection with official duties as a legal assistance attorney.
(b) Approved Legal Assistance Office. An "approved legal assistance office" for the purposes of this chapter is a military command tasked with providing legal assistance as approved by the Department of Defense or Department of Transportation.
(c) Supervising Attorney. A "supervising attorney" as used herein is a member in good standing of The Florida Bar who supervises an authorized legal assistance attorney engaged in activities permitted by this chapter. The supervising attorney must:
(1) be employed by or be a participating volunteer for an approved legal assistance office (to specifically include military reserve attorneys); and
(2) assume personal professional responsibility for supervising the conduct of the matter, litigation, or administrative proceeding in which the authorized legal assistance attorney participates.
(d) Authorized Legal Assistance Client. An "authorized legal assistance client" is an active duty military member holding a pay grade of E-3 or below (or his or her lawful family member) who is permanently assigned to an installation, unit, and/or activity located *299 within the geographic limitations of the courts of the state of Florida.

* * * * * *

RULE 18-1.3 ACTIVITIES
(a) Permissible Activities. An authorized legal assistance attorney, in association with an approved legal assistance office and under the supervision of a supervising attorney, may perform the following activities:
(1) appear in any court or before any administrative tribunal in this state on behalf of an authorized legal assistance client, provided the person on whose behalf the authorized legal assistance attorney is appearing has consented in writing to that appearance and a supervising attorney has given written approval for that appearance. The written consent and approval shall be filed in each case and shall be brought to the attention of a judge of the court or the presiding officer of the administrative tribunal;
(2) prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the authorized legal assistance attorney is involved; or
(3) engage in such other preparatory activities as are necessary for any matter in which the authorized legal assistance attorney is involved.

* * * * * *

RULE 18-1.4 SUPERVISION AND LIMITATIONS
(a) Supervision by Attorney. An authorized legal assistance attorney must perform all activities authorized by this chapter under the supervision of a supervising attorney.
(b) Representation of Bar Membership Status. Authorized legal assistance attorneys permitted to perform services under this chapter are not, and shall not represent themselves to be, members in good standing of The Florida Bar licensed to practice law in this state.
(c) Range of Legal Issues for Which Representation is Permitted. An authorized legal assistance attorney may appear in court on behalf of active duty military personnel provided the appearance is made concerning a civil matter limited to 1 of the following actions:
(1) all landlord/tenant disputes under applicable statutory law;
(2) all actions in small claims court;
(3) domestic relations matters limited solely to name changes, adoptions, paternity, child custody modification, or child/spousal support enforcement;
(4) routine or statutory probate matters limited solely to summary administration under applicable statutory law;
(5) all actions under the Florida Consumer Collection Practices Act; and
(6) all actions under the Florida Motor Vehicle Repair Act.

* * * * * *

RULE 18-1.5 CERTIFICATION
Permission for an authorized legal assistance attorney to perform services under this chapter shall become effective upon filing with and approval by the clerk of the Supreme Court of Florida of:
(a) a letter from the commanding officer of the approved legal assistance office stating that the authorized legal assistance attorney is currently assigned with that legal assistance office and that an attorney employed by or participating as a volunteer with that legal assistance office will assume the duties of the supervising attorney required hereunder;
(b) a certificate from the highest court or agency in the state, territory, or district in which the authorized legal assistance attorney is licensed to practice law certifying that the authorized legal assistance attorney is a member in good standing and has a clear disciplinary record as required by rule 18-1.2(a)(2), and advising of any pending complaints and/or investigations involving the authorized legal assistance attorney; and
(c) a sworn statement by the authorized legal assistance attorney that the attorney:
(1) has read and is familiar with chapter 4 of the Rules Regulating The Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
*300 (2) has completed The Florida Bar Young Lawyers Division Bridge-the-Gap Seminar (Basic Skills Course Requirement); and
(3) submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by chapter 3 and rule 18-1.7 of the Rules Regulating The Florida Bar, and authorizes the practitioner's home state to be advised of any disciplinary action taken in Florida.

* * * * * *

RULE 18-1.6 WITHDRAWAL OR TERMINATION OF CERTIFICATION
(a) Cessation of Permission to Perform Services. Permission to perform services under this chapter shall cease immediately upon the earlier of the following events:
(1) the commanding officer of the approved legal assistance office filing a notice with the clerk of the Supreme Court of Florida stating that the authorized legal assistance attorney has ceased to be associated with the legal assistance office, which notice must be filed within 30 days after such association has ceased; or
(2) the filing with the clerk of the Supreme Court of Florida of a notice by the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the Supreme Court of Florida to the authorized legal assistance attorney involved and to the approved legal assistance office to which the attorney had been certified. The certified legal assistance attorney shall have 15 days upon receipt of notice to request reinstatement for good cause.
(b) Notice of Withdrawal of Certification. If an authorized legal assistance attorney's certification is withdrawn for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the authorized legal assistance attorney was involved.

* * * * * *

RULE 18-1.7 DISCIPLINE
(a) Contempt; Withdrawal of Certification. In addition to any appropriate proceedings and discipline that may be imposed by the Supreme Court of Florida under chapter 3 of the Rules Regulating The Florida Bar, the authorized legal assistance attorney shall be subject to the following disciplinary measures:
(1) the presiding judge or hearing officer for any matter in which the authorized legal assistance attorney has participated may hold the authorized legal assistance attorney in civil contempt for any failure to abide by such tribunal's order, in the same manner as any other person could be held in civil contempt; and
(2) the Supreme Court of Florida or the approved legal assistance attorney may, at any time, with or without cause, withdraw certification hereunder.
(b) Notice to Home State of Disciplinary Action. The Florida Bar shall notify the appropriate authority in the authorized legal assistance attorney's home state of any disciplinary action taken against the authorized legal assistance attorney.